**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 11-3323 & 11-3324

_____

In re: SPANSION, INC., et al.,
Reorganized Debtors

SPANSION, INC., SPANSION TECHNOLOGY LLC,
SPANSION LLC, CERIUM LABORATORIES LLC
and SPANSION INTERNATIONAL, INC.,
Appellants

_____

On Appeal from the United States District Court
for the District of Delaware
D.C. Civil Action Nos. 10-cv-00252 & 10-cv-00554
(Honorable Robert B. Kugler)

_____

Argued November 14, 2012

Before: SCIRICA, FISHER and JORDAN, *Circuit Judges*.

(Opinion Filed: December 21, 2012)

MICHAEL R. LASTOWSKI, ESQUIRE (ARGUED)
Duane Morris
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801
  Attorney for Appellants

JOHN C. O'QUINN, ESQUIRE (ARGUED)
Kirkland & Ellis
655 15th Street, N.W., Suite 1200
Washington, D.C. 20005
  Attorney for Appellee,
  Apple Inc.

OPINION OF THE COURT

SCIRICA, *Circuit Judge*.

In November 2008 Spansion filed a patent infringement complaint over its flash memory products against Samsung and Apple with the International Trade Commission (ITC). In a letter agreement dated February 10, 2009 between Spansion and Apple, Spansion agreed to dismiss the ITC action against Apple and promised to refrain from filing future actions related to those patents. In exchange, Apple agreed to not disbar Spansion as a supplier, and to consider Spansion for future products if certain conditions were met. On March 1, 2009, Spansion filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Delaware. Under 11 U.S.C. § 365(a), Spansion moved to reject the letter agreement as an executory contract. The Bankruptcy Court granted the motion, and on September 1, 2009 it issued an order stating that "the Agreement… is hereby rejected; and further ordered that … this Order upon Apple, Inc. shall constitute adequate written notice of termination thereof." Apple then filed under 11 U.S.C. § 365(n) electing to retain its rights under the agreement, contending the agreement was a license.

Spansion moved to enforce the September Order arguing it terminated the agreement. Apple moved under FRCP 60(b) to clarify the Order, positing termination was never at issue and that Spansion did not request termination as relief. The September Order had adopted Spansion's sample order language virtually unchanged, and there was

2

no discussion before the Bankruptcy Court on the question of termination. Accordingly, the Bankruptcy Court amended its order to "provide that such order is without prejudice on the issue of whether… [the] agreement has been or can be terminated by Spansion." The Bankruptcy Court denied Apple's § 365(n) election, finding the agreement was not a license, so § 365(n) did not apply.

Apple appealed the Bankruptcy Court's denial of its § 365(n) notice and Spansion cross-appealed its grant of Apple's 60(b) motion. The District Court of Delaware held the agreement was a license because it was a promise not to sue, and held § 365 permits Apple to retain its rights under the patent license. The District Court further found the Bankruptcy Court did not abuse its discretion in granting the Rule 60(b) motion. Spansion appeals from the District Court judgment, but contends we do not have jurisdiction over the appeal because the District Court remanded to the Bankruptcy Court.

**I**

**A**

"The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered" by district courts with appellate jurisdiction over bankruptcy court decisions. 28 U.S.C. § 158(d). Finality is often assessed differently in the bankruptcy context because the bankruptcy court continues to determine the disposition of the debtor's other assets, even when there is a final order involving one of those assets. We consider several pragmatic factors to determine whether we have jurisdiction, including: "the impact upon the assets of the bankrupt estate, the necessity for further fact-finding on remand, the preclusive effect of our decision on the merits on

3

further litigation, and whether the interest of judicial economy would be furthered." *In re Meyertech*, 831 F.2d 410, 414 (3d Cir. 1987).

Determining whether the letter agreement is a license and whether there was a valid § 365(n) election impacts Spansion's patent assets.  No other fact-finding is necessary to resolve whether the agreement was a license or whether the § 365(n) election was valid.  Furthermore, our decision on the merits will have preclusive effect on further litigation, because the state law termination issue is predicated on a valid § 365(n) election.  Determination of the license issue also impacts the Bankruptcy Court's interpretation of state contract law, because the ability to terminate contracts at will can be limited by federal intellectual property law.  *See, e.g.*, *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 585-85 (9th Cir. 1993) (finding licensing agreements without a stated duration not terminable at will, because under federal law copyrights expire after 35 years, creating an end date to the licensing contract).

Judicial economy favors jurisdiction.  The validity of the license and the amended order leaves open the question whether Apple may continue to use Spansion's patented products, and whether Apple could be subject to further patent litigation by Spansion.  The interests of judicial economy would be served by resolving the status of the letter agreement.

**B**

"We exercise plenary review of an order issued by a district court sitting as an appellate court in review of the bankruptcy court." *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003).  Legal conclusions are reviewed de novo and the

bankruptcy court's findings of fact are reviewed for clear error. *In re Exide Techs.*, 607 F.3d 957, 962 (3d Cir. 2010).

"We review a district court's denial of a Rule 60(b) motion for abuse of discretion." *Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 174 F.3d 305, 311 (3d Cir. 1999). An abuse of discretion may be found when "the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987).

## II

### A

The District Court upheld the Bankruptcy Court's judgment to amend the September Order under Rule 60(b)(6). Rule 60(b)(6) provides relief from judgment for "any [] reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The rule seeks "to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Educ. and Welfare*, 572 F.2d 976, 977 (3d Cir. 1978). Accordingly, "Rule 60 is to be liberally construed in order that judgments will reflect the true merits of a case." 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2852 (3d ed. 2012). A Rule 60(b)(6) motion is generally reserved for extraordinary circumstances where extreme and unexpected hardship will result absent relief. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008).

The termination issue was not before the Bankruptcy Court, not considered by the Bankruptcy Court, and not adjudicated by the Bankruptcy Court. Spansion provided no

5

evidence or argument in support of termination. Accordingly, the Bankruptcy Court amended its order to reflect the fact that it made no determination on the termination issue. Ordering relief the court did not intend to grant is an extraordinary circumstance. The Bankruptcy Court did not abuse its discretion in correcting this error by granting the Rule 60(b) motion.

**B**

"[A] license … [is] a mere waiver of the right to sue by the patentee." *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 242 (1927) (quotations omitted). A license need not be a formal grant, but is instead a "consent[] to [the] use of the patent in making or using it, or selling it … and a defense to an action for a tort." *Id*. at 241. The Court of Appeals for the Federal Circuit explained that the inquiry focuses on what the agreement authorizes, not whether the language is couched in terms of a license or a covenant not to sue; effectively the two are equivalent. *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275-76 (Fed. Cir. 2009).

In the letter agreement, Spansion promised "to dismiss the ITC action against Apple, and [to] not re-file the ITC action or another action related to one or more of the same patents against Apple." This was a promise not to sue Apple for its use of Spansion's patented products. Accordingly, as the District Court found, the letter agreement is a license. Since all the evidence before the Bankruptcy Court showed the agreement was a license, the District Court properly held the Bankruptcy Court finding was clear error.

6

## C

After a debtor rejects a contract under § 365(a), section 365(n) allows the holder of an intellectual property license to elect to retain its rights under the contract. 11 U.S.C. § 365(n)(1)(B). The Bankruptcy Court denied Apple's § 365(n) election because of the "cessation of business between Spansion and Apple" after Spansion moved to reject the agreement. But § 365(n)(1)(B) allows a licensee "to retain its rights… as such rights existed immediately before the case commenced." 11 U.S.C. § 365(n)(1)(B), *see also* 2 William L. Norton Jr., *Norton Bankruptcy Law & Practice* 3d § 46:57 ("The rights which may be retained are those existing 'immediately before the case commenced.'"). Accordingly, cessation of business after Spansion filed for bankruptcy is irrelevant to the § 365(n) analysis. Since the letter agreement was a license, Spansion's rejection of the license under § 365(a) triggered Apple's right to elect to retain its licensing rights under § 365(n).

## III

For the foregoing reasons, we will affirm the judgment of the District Court.