**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CENTURION PROPERTIES III, LLC; SMI GROUP XIV, LLC, *Plaintiffs-Appellants*, <br><br> v. <br><br> CHICAGO TITLE INSURANCE COMPANY, a Nebraska company, *Defendant-Appellee*. | No. 13-35692 <br><br> D.C. No. 2:12 cv-05130 RMP |
| CENTURION PROPERTIES III, LLC; SMI GROUP XIV, LLC, *Plaintiffs-Appellees*, <br><br> v. <br><br> CHICAGO TITLE INSURANCE COMPANY, a Nebraska company, *Defendant-Appellant*. | No. 13-35725 <br><br> DC No. 2:12 cv-05130 RMP <br><br> ORDER RE CERTIFICATION |

Appeals from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, Chief District Judge, Presiding

Argued and Submitted
June 2, 2015—Seattle, Washington

Filed July 16, 2015

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and M. Margaret McKeown, Circuit Judges.

Order

## SUMMARY[*]

### Certification of Question to State Supreme Court

The panel certified to the Washington Supreme Court the following question:  Does a title company owe a duty of care to third parties in the recording of legal instruments?

### COUNSEL

Steven J. Wells (argued), Timothy J. Droske, Dorsey & Whitney LLP, Minneapolis, Minnesota; Peter S. Ehrlichman, Todd S. Fairchild, Dorsey & Whitney LLP, Seattle, Washington, for Plaintiffs-Appellants/Cross-Appellees.

Stephen J. Sirianni (argued), Sirianni Youtz Spoonemore Hamburger, Seattle, Washington, for Defendant-Appellee.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**ORDER**

This case arises from a dispute between plaintiffs-appellants Centurion Properties III, LLC ("CPIII") and SMI Group XIV, LLC ("SMI") (together, "Plaintiffs"), and defendant-appellee Chicago Title Insurance Company ("Chicago Title") over whether Chicago Title breached a duty of care to Plaintiffs, causing damages, when it recorded unauthorized liens on CPIII's property. We have jurisdiction under 28 U.S.C. § 1291. The appeal turns on whether a title company owes a duty of care to third parties in these circumstances, which is a potentially dispositive, but unresolved and important question in Washington law. Thus, we respectfully certify to the Washington Supreme Court the following question:

> Does a title company owe a duty of care to third parties in the recording of legal instruments?

**I.**

CPIII was formed in 2006 to purchase a tract of real property in Richland, Washington (the "subject property"). SMI, which was owned by Michael Henry ("Henry"), controlled ten percent of CPIII. The remaining ninety percent was owned by entities controlled by Tom Hazelrigg III and his son, Aaron Hazelrigg. CPIII's managing member upon its formation was an Aaron Hazelrigg-owned company known as Centurion Management III, LLC ("CMIII"), which owned seventy-eight percent of CPIII.

Shortly after its formation, CPIII purchased the subject property, which was financed by a loan from General Electric

Capital Corporation ("GECC"); in turn, the loan was secured by a senior lien on the subject property. As a condition of the loan, CPIII agreed not to further encumber the subject property without GECC's prior written approval. The GECC Loan Agreement specified that CPIII's failure to comply with this condition constituted an event of default.

Chicago Title served as the escrow, closing agent, and title insurer for the original purchase, and it also was named trustee of GECC's senior lien. Pursuant to this role, Chicago Title received copies of the documents prohibiting the recording of junior liens on the property.

In July 2007, Aaron Hazelrigg signed a junior deed of trust to another lender, Centrum Financial Services, Inc. ("Centrum"), encumbering the property. Chicago Title served as the title insurer on this transaction, and it was also tasked with recording the junior lien. Centrum provided Chicago Title with the following instructions for recording:

> You may record the Leasehold [Deed of Trust], provided you are irrevocably committed to insure the enclosed Mortgage, on a mortgagee's extended basis with coverage of $10,000,000.00, as a valid SECOND lien against the leasehold property which is the subject of the commitment for title insurance issued under the referenced file number, subject only to matters set forth therein.

Centrum also provided Chicago Title with another copy of the documents prohibiting CPIII from recording a second lien against the subject property without GECC's approval.

Chicago Title subsequently issued the title insurance policy and recorded the junior lien.  Chicago Title later recorded three more instruments against the subject property as a courtesy service to Centrum.[1]  Chicago Title has "conced[ed] . . . that it could be charged with actual knowledge of [the documents prohibiting recording of junior liens] when it . . . recorded the liens."  *Centurion Props., III, LLC v. Chi. Title Ins. Co.*, No. CV-12-5130-RMP, 2013 WL 3350836, at *6 (E.D. Wash. July 3, 2013).

In September 2009, GECC learned about the junior liens on the subject property after obtaining a title report reflecting the recordings.  GECC notified CPIII that events of default had occurred.  In January 2010, GECC declared that CPIII was in default and commenced foreclosure proceedings.

In response to the default, CPIII – now led by Henry and SMI, rather than CMIII and the Hazelriggs – sought replacement financing for the property.  CPIII negotiated with a potential replacement lender, CTL Capital, which at one point indicated there was a "reasonable likelihood" that it would be able to provide the loan.  However, for reasons the record does not directly reflect, CTL Capital backed out of the financing.  Henry indicated in affidavit testimony that he believed, based on "lengthy experience in commercial real estate transactions and financing," that CTL Capital backed out because junior liens had been recorded against the subject property.

In February 2010, CPIII and SMI filed suit in Washington state court against a large number of parties, including Tom

---

[1] An additional legal instrument was recorded against the subject property by First American Title Insurance Co.

and Aaron Hazelrigg and Centrum, alleging improper actions taken while the Hazelriggs controlled CPIII.  The case was removed to the U.S. District Court for the Eastern District of Washington.

CPIII subsequently declared bankruptcy after failing to obtain replacement financing for the GECC loan.  The district court in October 2010 thus referred the case to the U.S. Bankruptcy Court for the Eastern District of Washington, where it became an adversary proceeding in the bankruptcy case.  In April 2011, while the adversary proceeding was pending in bankruptcy court, Appellants amended their complaint to assert a claim against Chicago Title for negligence, stemming from Chicago Title's recording of the disputed liens.  The district court accepted CPIII's reorganization plan before ruling on the parties' summary judgment motions in the adversary proceeding; thus, the case returned to federal district court.  The district court subsequently granted summary judgment to Chicago Title on the negligence claim, holding that Chicago Title did not owe a duty of care to Plaintiffs.  This appeal followed.

## II.

### A.

Certification is a means "to obtain authoritative answers to unclear questions of state law." *Toner for Toner v. Lederle Labs., Div. of Am. Cyanamid Co.*, 779 F.2d 1429, 1432 (9th Cir. 1986).  In general, its use "in a given case rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).  Certification is particularly appropriate "where the issues of law are complex and have 'significant policy implications.'"  *McKown v.*

*Simon Prop. Group Inc.*, 689 F.3d 1086, 1091 (9th Cir. 2012) (quoting *Perez-Farias v. Global Horizons, Inc.*, 668 F.3d 588, 593 (9th Cir. 2011)).

Washington state law recognizes the propriety of certification "[w]hen in the opinion of [the] federal court before whom a proceeding is pending, it is necessary to ascertain the local law of [Washington] in order to dispose of such proceeding and the local law has not been clearly determined." Wash Rev. Code § 2.60.020; *see McKown*, 689 F.3d at 1091. Thus, we have certified a question to the Washington Supreme Court where a question of law "'has not been clearly determined' by the Washington courts," *Bylsma v. Burger King Corp.*, 676 F.3d 779, 783 (9th Cir. 2012) (quoting § 2.60.020), and "the answer to [the] question is outcome determinative," *id.*

### B.

Under the standards articulated above, certifying to the Washington Supreme Court the question whether a title company owes a duty of care to third parties when recording legal instruments is an appropriate and reasonable exercise of our discretion. Whether Chicago Title owed such a duty is determinative to how this appeal will be resolved. If, as the district court reasoned, Chicago Title owed no duty, then we would affirm the district court's grant of summary judgment to Chicago Title. If Chicago Title did owe a duty of care, then summary judgment would be inappropriate at this stage. In that event, we likely would remand to the district court for a determination in the first instance as to causation, which the parties also dispute. *See Quinn v. Robinson*, 783 F.2d 776, 814 (9th Cir. 1986) ("As a general rule, 'a federal appellate

court does not consider an issue not passed upon below.'" (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))).

Whether a duty of care exists in these circumstances is a matter of Washington common law.  In determining the existence and scope of a duty, Washington courts weigh "considerations of 'logic, common sense, justice, policy, and precedent.'" *Snyder v. Med. Serv. Corp. of E. Wash.*, 35 P.3d 1158, 1164 (Wash. 2001) (quoting *Lords v. N. Auto. Corp.*, 881 P.2d 256, 260 (Wash. Ct. App. 1994)).

To date, no Washington case has addressed whether a title company owes a duty of care to third parties to refrain from negligently recording legal instruments. Plausible arguments can be made on both sides.

Washington courts have concluded that professionals owe duties of care to third parties in other contexts.  For example, in *Affiliated FM Insurance Co. v. LTK Consulting Services, Inc.*, the Washington Supreme Court concluded that an engineering firm owed a duty of care – to refrain from producing negligent designs – to third parties who foreseeably might be injured by the products of those designs. 243 P.3d 521, 528 (Wash. 2010). Washington courts have indicated that similar duties of care exist in some instances for accountants and real estate appraisers.  *See Schaaf v. Highfield*, 896 P.2d 665, 670 (Wash. 1995); *Dewar v. Smith*, 342 P.3d 328, 334–35 (Wash. Ct. App. 2015).

According to Plaintiffs, title companies occupy a position of public trust similar to engineers and accountants, *see White v. W. Title Ins. Co.*, 710 P.2d 309, 315–16 (Cal. 1986) ("A title company is engaged in a business affected with the public interest . . . ."), and ought to be held liable insofar as

their negligence in recording legal instruments affects foreseeable victims. For this proposition, Plaintiffs lean heavily on the Washington Supreme Court's decision in *Affiliated FM*. However, *Affiliated FM* arguably gave special treatment to engineers because of the propensity of their work to result in physical injury. *Affiliated FM*, 243 P.3d at 528 ("An interest we must consider is the safety of persons and property from physical injury, an interest that the law of torts protects vigorously."). Further, title companies engaged in the recording of legal instruments may be different from other professionals because recording typically does not involve the exercise of professional discretion, as does the provision of accounting or appraisal services.[2] *See McLean v. City of N.Y.*, 905 N.E.2d 1167, 1173 (N.Y. 2009) ("[M]inisterial acts may support liability only where a special duty is found."). We cannot extrapolate from *Affiliated FM* that the Washington Supreme Court would extend a duty of care to companies recording legal instruments.

Chicago Title's arguments are equally unsatisfactory. Chicago Title emphasizes that the Washington Supreme Court has held that title companies do not owe tort duties to contracting parties when issuing "preliminary commitments" for title insurance, which, according to Chicago Title, means that Washington courts would not approve of title companies' owing duties to third parties. *See Barstad v. Stewart Title Guar. Co.*, 39 P.3d 984, 988 (Wash. 2002); *Klickman v. Title Guar. Co. of Lewis Cnty.*, 716 P.2d 840, 842 (Wash. 1986). Although these precedents arguably suggest a reticence to impose duties on title companies beyond those they assume

---

[2] We note, however, that Plaintiffs presented plausible evidence that Centrum instructed Chicago Title to record the disputed liens *only if* they were valid, thereby calling on Chicago Title's professional discretion.

through contract, that is not the only reasonable interpretation. That tort duties do not attach when a title company issues "a statement submitted to the potential insured establishing the terms and conditions upon which the title insurer is willing to issue a title policy" does not prove that title companies have blanket immunity from tort liability. *Barstad*, 39 P.3d at 988 (citing Wash Rev. Code § 48.29.010(3)(c)). Considerations of "logic, common sense, justice, policy, and precedent" may counsel for more expansive liability when a title company actually acts on behalf of a client. *Snyder*, 35 P.3d at 1164 (quoting *Lords*, 881 P.2d at 260).

Precedent outside of Washington is also inconclusive. We are aware of only two cases to address whether title companies owe a duty of care to third parties. In the first case, *Seeley v. Seymour*, the California Court of Appeal concluded emphatically that the title company defendant did owe a duty of care to a third party to refrain from negligent recording of title documents. 237 Cal. Rptr. 282, 291–92 (Ct. App. 1987) ("As institutions charged with the public trust, it is important that [title companies] be held accountable when their negligent acts result in economic harm to individual property interests."). In the other case, *Luce v. State Title Agency, Inc.*, the Court of Appeals of Arizona reached precisely the opposite conclusion. 950 P.2d 159, 162 (Ariz. Ct. App. 1997).

In sum, there is no way accurately to predict how the Washington Supreme Court would decide this matter. "Our task, when sitting in diversity, is to ask ourselves what the Washington Supreme Court would do with this case . . . . Simply put, we just do not know what it would do." *McKown*, 689 F.3d at 1093–94. Any decision by the panel

essentially would be making a policy judgment that lies properly within the purview of the Washington Supreme Court.**[3]**

Holding that title companies owe duties to third parties when recording legal instruments might have a significant impact on how the title industry and recording generally operates in Washington. *Cf. Keystone Land & Dev. Co. v. Xerox Corp.*, 353 F.3d 1093, 1097 (9th Cir. 2003) (certifying question to the Washington Supreme Court, in part, because of potential "far-reaching effects on those who contract in, or are subject to, Washington law").  These concerns are particularly acute given Washington courts' insistence on a stable, orderly recording system. *See Ellingsen v. Franklin Cnty.*, 810 P.2d 910, 913 (Wash. 1991).  We take no position on the issue; we  merely wish to indicate that the common law issue at bench is a weighty one, and that Washington's own courts are best suited to decide it.

### III.

In light of the foregoing discussion, we hereby certify the following question to the Washington Supreme Court:

> Does a title company owe a duty of care to third parties in the recording of legal instruments?

---

**[3]** Ordinarily, we are hesitant to certify a question when certification is requested for the first time on appeal. *Thompson*, 547 F.3d at 1065. The question presented here, however, "raise[s] important policy considerations that only Washington state can answer." *McKown*, 689 F.3d at 1094.

In framing the question this way, "[w]e do not intend to restrict the Washington Supreme Court's consideration of this issue, and we recognize that it may reformulate the question." *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 763 F.3d 1232, 1235 (9th Cir. 2014).

The Clerk of Court is hereby ordered to transmit to the Washington Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all briefs and excerpts of record pursuant to Wash. Rev. Code §§ 2.60.010(4), 2.60.030(2), and Wash. R. App. P. 16.16.

If the Washington Supreme Court accepts the certified question, we designate appellant CPIII as the party to file the first brief pursuant to Wash. R. App. P. 16.16(e)(1).

We hereby vacate submission and stay further proceedings in this court pending the Washington Supreme Court's decision whether it will accept the certified question and, if so, receipt of the Washington Supreme Court's answer to the certified question. The panel will resume control and jurisdiction upon receipt of an answer to the certified question or upon the Washington Supreme Court's decision to not accept the certified question.

When the Washington Supreme Court decides whether or not to accept the certified question, the parties shall file promptly a joint status report informing this court of the decision. If the Washington Supreme Court accepts the certified question, the parties shall file a further joint status

report informing this court when the Washington Supreme Court issues an answer to the certified question promptly upon the issuance of that determination.

**IT IS SO ORDERED.**

_____

Chief Judge Sidney R. Thomas
U.S. Court of Appeals for the Ninth Circuit